ADLESON, HESS & KELLY, APC
Randy M. Hess, Esq. (SBN 88635)
rhess@ahklaw.com
Nicole S. Adams-Hess, Esq. (SBN 286632)
nhess@ahklaw.com
577 Salmar Avenue, Second Floor
Campbell, California 95008
Telephone: (408) 341-0234
Facsimile: (408) 341-0250

Attorneys for Plaintiff
DIANA GDOWSKI

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| DIANA GDOWSKI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM GENERAL INSURANCE COMPANY, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No: 2:18-cv-10596<br><br>**DIANA GDOWSKI'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT RE BREACH OF DUTY TO DEFEND; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Date: July 26, 2019**<br>**Time: 10:00 a.m.**<br>**Courtroom: 7B**<br>**Judge: Hon. Andre Birotte Jr.**<br><br>[Filed concurrently herewith: Statement of Uncontroverted Facts and Conclusions of Law; Declaration of Diana Gdowski; Declaration of Randy M. Hess; [Proposed] Order] |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN THAT,** on Friday, July 26, 2019, at 10:00 a.m. in Courtroom 7B of the United States District Court for the Central District of California, located at the First Street Courthouse, 350 West First Street, Los Angeles, California 90012, the Honorable Andre Birotte, Jr. presiding, Plaintiff Diana Gdowski will and hereby does move this Court for an order granting partial summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, by determining that defendant State Farm General Insurance Company ("State Farm") has breached its duty to defend Ms. Gdowski under her Homeowners Insurance Policy and/or her Personal Liability Umbrella Insurance Policy in response to the cross-complaint filed against Ms. Gdowski by Wayne K. Tsang, Bonni C. Ying and their family trust (collectively, "Tsangs") in the civil action titled *Diana Gdowski v. Wayne K. Tsang and Bonni C. Ying et al.*, case number BC605329, Los Angeles County Superior Court (the "underlying action").

Ms. Gdowski's motion is based upon this Notice of Motion and Motion, the concurrently-filed Statement of Uncontroverted Facts and Conclusions of Law, the Declarations of Diana Gdowski and Randy M. Hess, and the exhibits thereto, the attached Memorandum of Points and Authorities, the Reply Brief, and any such other or further briefing as may be submitted to or ordered by the Court, the authorities cited therein, applicable law, the oral arguments of counsel (if any), and any such other or further matters as the Court may properly consider.

Ms. Gdowski's Motion for Partial Summary Judgment is made on the grounds that State Farm breached its duty to defend Ms. Gdowski in the underlying action, because (among other reasons):

a. The underlying action's operative pleadings, answers to discovery and other evidence show claims made against Ms.

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

Gdowski that Ms. Gdowski and/or her agents allegedly caused "bodily injury," "property damage," and/or "personal injury" to the Tsangs;

b. State Farm cannot conclusively prove that any exclusion precludes coverage; and

c. State Farm has refused to defend Ms. Gdowski under both the Homeowners Policy and the Umbrella Policy.

The undisputed facts demonstrate: (i) claims made against Ms. Gdowski come within the coverage of one or both of the policies issued by State Farm, (ii) State Farm cannot prove conclusively that any exclusion precludes coverage, (iii) the undisputed facts confirm State Farm has refused to defend Ms. Gdowski under either of the policies issued, and (iv) no genuine dispute of material fact exists concerning State Farm's breach of its duty to defend Ms. Gdowski in the underlying action. Ms. Gdowski is entitled to partial summary judgment regarding State Farm's duty to defend as a matter of law.

Ms. Gdowski's Motion is made following conference of counsel required by Civil Local Rule 7-3, which occurred telephonically between counsel of record Nicole Adams-Hess for Ms. Gdowski and Michael McGuire for State Farm on February 21, 2019, and telephonically between counsel of record Randy M. Hess for Ms. Gdowski and Michael McGuire for State Farm on February 27, 2019. The parties were unable to come to agreement to avoid the need for filing the instant motion.

Dated: June 21, 2019 ADLESON, HESS & KELLY, APC

By: /s/ Randy M. Hess

Randy M. Hess
Nicole S. Adams-Hess
Attorneys for Plaintiff
Diana Gdowski

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

## TABLE OF CONTENTS

**Page No.**


**I. INTRODUCTION** ........ 1

**II. STATEMENT OF FACTS** ........ 2

**A. The Underlying Action** ........ 2

**B. The State Farm Insurance Policies** ........ 6

1. The Homeowners Policy ........ 6

2. The Umbrella Policy ........ 7

**C. State Farm Wrongfully Refused to Defend Ms. Gdowski** ........ 9

**III. ARGUMENT** ........ 9

**A. Under Established California Law, State Farm Clearly Owed Ms. Gdowski a Defense to the Claims Asserted by the Tsangs** ........ 9

**B. As a Matter of Law, State Farm Breached Its Duty to Defend Ms. Gdowski Under the Homeowners Policy** ........ 12

1. The Tsangs Make Multiple Factual Allegations Coming Within the "Property Damage" Coverage of the Homeowners Policy ........ 12

2. The Tsangs Make Factual Claims Coming Within the "Bodily Injury" Coverage of the Homeowners Policy ........ 14

3. The Claims Alleged Against Ms.Gdowski Constitute Multiple "Occurrences" Under the Homeowners Policy ........ 14


ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

4. The Property Damage and Bodily Injury Alleged Are Not Excluded as Expected, Intended, Willful or Malicious ........ 17

**C. As a Matter of Law, State Farm Breached its Duty to Defend Ms. Gdowski Under the Umbrella Policy** ...... 19

1. The Tsangs Allege Facts Supporting a Claim for Wrongful Eviction ........ 20

2. The Tsang Cross-Complaint Encompasses a Claim for Invasion of the Right of Private Occupancy ........ 22

**IV. CONCLUSION** ........ 25

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

## TABLE OF AUTHORITIES

**Page No.**

**Cases**

*Liberty Surplus Ins. Corp. v. Ledesma & Meyer Construction Co.*, 5 Cal. 5th 216 (2018) .......... 15, 17
*AIU Ins. Co. v. Superior Court (FMC Corp.)*, 51 Cal.3d 807 (1990).......... 12, 25
*Amato v. Mercury Cas. Ins. Co.,* 18 Cal.App.4th 1784 (1993).......... 18
*Ameron Intern. Corp. v. Insurance Co. of State of Pennsylvania*, 50 Cal.4th 1370 (2010) .......... 11
*Barnett v. Fireman's Fund,* 90 Cal.App.4th 500 (2001) .......... 10
*Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.,* 5 Cal. 4th 854 (1993) .......... 24
*Bruce DeMay v. Interinsurance Exchange*, 32 Cal.App.4th 1133 (1995).......... 18
*Cal Farm Ins. v. TAC,* 172 Cal.App.3d 564 (1985).......... 18
*Clemmer v. Hartford Ins. Co.,* 22 Cal.3d 865 (1978) .......... 17
*CNA Cas. of California v. Seaboard Surety Co.,* 176 Cal.App.3d 598 (1986)... 10
*Cunningham v. Universal Underwriters,* 98 Cal.App.4th 1141 (2002) .......... 21
*David Kleis, Inc. v. Superior Court* 37 Cal.App.4th 1035 (1995).......... 19
*Delgado v. Interinsurance Exchange of Automobile Club of Southern California* 47 Cal.4th 302, 311 (2009) .......... 15
*Fibreboard Corp. v. Hartford,* 16 Cal.App.4th 492 (1993).......... 20
*Gasperini v. Center for Humanities, Inc.* 518 U.S. 415 (1996).......... 9
*Gray v. Zurich Ins. Co.*, 65 Cal.2d 263 (1966).......... 10, 18
*Insurance Co. of State of Pennsylvania v. American Safety Indemnity Co.*, 32 Cal.App.5th 898 (2019).......... 12
*MacKinnon v. Truck Ins. Exch.*, 31 Cal.4th 635 (2003) ..........21

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

*Martin Marietta v. Ins. Co. of North America,* 40 Cal.App.4th 1113 (1995) ....... 20
*Miller v. Elite Ins. Co.,* 100 Cal.App.3d 739 (1990) ........................................ 18
*Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal.4th 645 (1995) .................. 21
*Montrose Chemical Corp v. Superior Court,* 6 Cal.4th 287 (1993) . 10, 11, 13, 18
*Nollan v. California Coastal Com'n,* 483 U.S. 825 (1987) ................................ 24
*Powerine Oil Co. Inc. v. Sup. Ct.*, 37 Cal.4th 377 (2005) ................................ 21
*Safeco Ins. Co. v. Robert S.*, 26 Cal.4th 758 (2001) ........................................ 15
*Sanders v. Allen,* 83 Cal.App.2d 362 (1948) .................................................. 22
*State Farm Fire and Casualty Co. v. Superior Court*, 164 Cal.App.4th 317 (2008) ........................................................................................ 16
*State Farm v. Partridge,* 10 Cal.3d 94, 101 (1973) .......................................... 18
*Stonelight Tile, Inc. v. Cal. Ins. Guar. Ass'n*, 150 Cal. App. 4th 19 (2007) ........ 20
*Vandenberg v. Superior Court,* 21 Cal.4th 815 (1999) ..................................... 10
*White v. Western Title Ins. Co.,* 40 Cal.3d 870 (1985) ..................................... 21

**Other Authorities**

*Cambridge English Dictionary*, www.dictionary.cambridge.org/us/dictionary/english/evict ............................ 21
*Collins English Dictionary*, *www.collinsdictionary.com /us/dictionary/english/evict* ................................ 21
*The Cambridge Dictionary,* *https://dictionary.cambridge.org/us/dictionary/english/residence* .................. 23
*The Free Dictionary*, *www.thefreedictionary.com /constructive+eviction* ........................................ 22
*Webster's Online Dictionary,* *https://www.merriam-webster.com/dictionary/dwelling* ................................. 24
*Webster's Online Dictionary,* *https://www.merriam-webster.com/dictionary/premises* ................................ 23

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

For decades, Ms. Gdowski faithfully paid premiums to State Farm General Insurance Company ("State Farm") for both homeowners and personal liability umbrella insurance coverage. However, when she needed her coverage most, State Farm refused to honor its obligations. Ms. Gdowski was sued by her neighbors, who asserted multiple allegations triggering a duty to defend, but State Farm refused all pleas for coverage. Ms. Gdowski brings this motion for partial summary judgment to obtain an order determining that State Farm owed her a defense and breached its duty to defend.

In the underlying action, Ms. Gdowski's neighbors, Wayne K. Tsang and Bonni C. Ying, individually and as trustees of their family trust (collectively, "the Tsangs") assert a nuisance cause of action against Ms. Gdowski seeking damages based on acts allegedly taken by Ms. Gdowski and/or her agents with respect to the Tsangs' residence. Based on the Tsangs' pleadings and discovery responses, they assert multiple allegations raising the potential for coverage, requiring State Farm to defend Ms. Gdowski. In particular:

1. The Tsangs allege that Ms. Gdowski's conduct caused their home to be damaged resulting in the loss of use of their home, triggering State Farm's duty to defend Ms. Gdowski under the "property damage" liability coverage under the State Farm Homeowners Policy. In addition, in an ex parte application, the Tsangs alleged that Ms. Gdowski and/or her agents engaged in acts, encompassed by their nuisance cause of action, that caused additional property damage, again triggering State Farm's duty to defend "property damage" liability claims under the Homeowners Policy.

2. The Tsangs state in interrogatory responses that they suffered physical injuries as a result of Ms. Gdowski's alleged conduct, again triggering

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

State Farm's duty to defend under the "bodily injury" liability coverage of the State Farm Homeowners Policy.

3. The Tsangs allege facts constituting a claim against Ms. Gdowski for wrongful eviction from their residence, again triggering State Farm's duty to defend under the "personal injury" coverage in the State Farm Umbrella Policy.

4. In an ex parte application, the Tsangs allege that Ms. Gdowski or her agents trespassed and improperly entered their residence (encompassed in the Tsangs' nuisance cause of action), again triggering State Farm's duty to defend for alleged violations of the right of private occupancy under the "personal injury" coverage in the State Farm Umbrella Policy.

Ms. Gdowski denies all allegations against her in the underlying action. Nevertheless, she is entitled to a complete defense to these allegations by State Farm. This matter is made more urgent because trial in the underlying action is set to begin on September 23, 2019.

## II. STATEMENT OF FACTS

### A. The Underlying Action

Ms. Gdowski and the Tsangs reside on adjacent properties in the City of Palos Verdes Estates ("City"). SUF 2. The Tsangs sought City approval to redevelop their residence including demolishing their existing home and building a newly constructed home on their property (the "Project"). SUF 2. In connection with the City approval, Ms. Gdowski and the Tsangs entered into a contract related to the installation of drainage improvements on the Tsangs' property. When the Tsangs failed to perform, Ms. Gdowski sued for specific performance to enforce the contract by a complaint titled *Diana Gdowski v. Wayne K. Tsang and Bonni C. Ying et al.*, case number BC605329 (the "underlying action"), and the Tsangs thereafter filed a cross-complaint against Ms. Gdowski a little over six months after Ms. Gdowski initiated the underlying action. SUF 1.

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

*Allegations in the Cross-Complaint*: On or about July 5, 2016, the Tsangs filed a cross-complaint against Ms. Gdowski (the "cross-complaint") in the underlying action. SUF 1. The cross-complaint alleges that:

1. In October 2008, the Tsangs commenced a project to replace their primary residential home with a newly constructed home on the Tsang property, which is adjacent to Ms. Gdowski's property. SUF 2.

2. From 2008 "and continuing to this day", Ms. Gdowski allegedly engaged in a "calculated and relentless campaign" to harass the Tsangs and their agents by repeatedly interfering with, and delaying, their Project, and depriving them of their ability to enjoy the use of their property. SUF 3.

3. Ms. Gdowski allegedly demanded that the Tsangs change their Project on numerous occasions and forced them to incorporate so many versions of roof silhouettes on the previous house that the roof of the previous house was damaged beyond repair, leaving the Tsangs little choice but to move forward with the demolition of their old house and construction of their proposed new house. SUF 4.

4. As a direct and proximate result of Ms. Gdowski's alleged conduct, the Tsangs allege: (i) the Project was delayed for years, (ii) the cost of the Project increased, (iii) they were forced to live in another home, (iv) they suffered severe emotional distress, (v) they were deprived of their rights to the quiet enjoyment of their family residence for years, (vi) their children were deprived of their opportunity to live out their childhood in their home, and (vii) their parents were denied the opportunity to live in the home. SUF 5.

5. Ms. Gdowski allegedly engaged in other actions which significantly delayed the Project, and caused the Tsangs to incur a tremendous amount of money and time delays, as well as causing stress and anxiety. SUF 6.

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

6. Ms. Gdowski allegedly created a condition which denied the Tsangs their right to use and/or enjoy their property and prevented them from moving into their new home. SUF 7.

7. Ms. Gdowski's alleged conduct "was committed both prior to the commencement of this action, and after." SUF 8.

8. Ms. Gdowski's alleged "constant harassment" delayed the Project for years and thereby deprived the Tsangs and their family of the right to enjoy their property. SUF 9.

9. Ms. Gdowski was allegedly aware of the fact that the Project involved the Tsangs' primary family residence, that they had young children at the commencement of the Project, and that delays in the Project would significantly increase its cost as well as deprive the Tsangs and their children from living at their primary family residence. SUF 10.

*Allegations in Discovery*: Ms. Gdowski served form interrogatories on the Tsangs, asking whether they attribute any physical, mental or emotional injuries to the circumstances and events giving rise to the litigation. SUF 11. On December 30, 2016, the Tsangs provided the following responses:

1. Both responded that they have "indeed suffered physical, mental or emotional injuries as a result of [Ms. Gdowski's] conduct." SUF 12.

2. Ms. Ying's response states that she has suffered "health issues" that may be related to the actions of Ms. Gdowski. SUF 13.

3. In another response, Ms. Ying states: "Responding Party continues to suffer distress due to the fact that her children and family members have lost their ability to live in their dream home due to the constant harassment by the requesting party. Additionally, Responding Party continues to suffer stress and sleeplessness as the result of the requesting party's actions. **Additionally, Responding Party has suffered health issues in the last year that may be**

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

**attributable to the requesting party's conduct**. Discovery and investigation are continuing." SUF 14 (emphasis added).

4. Ms. Ying stated that she is "taking medication for her health issues that have begun in the last year" and that "discovery and investigation are continuing to determine whether [Ms. Gdowski's] actions have caused or contributed to these issues." SUF 15.

*Allegations in Ex Parte Application*: Even before filing their cross-complaint, the Tsangs filed pleadings alleging conduct giving rise to their claims for property damage and personal injury. On May 20, 2016, approximately a month before filing their cross-complaint, the Tsangs brought an ex parte application to terminate orders entered by the trial court in the underlying action allowing Ms. Gdowski or her agents to inspect work occurring on the Tsangs' property. SUF 16. The Tsangs asserted Ms. Gdowski or her agents had trespassed on their property and caused property damage. In particular, Dawn B. Eyerly, the Tsangs' counsel, stated in her declaration:

> I was recently informed that it appeared that trespassers [allegedly Ms. Gdowski's agents] were breaking into the construction site after-hours, by climbing the large, locked fence. This was known because dirt and other items on the construction site had been moved… Plaintiff and her agents have been going to defendant's construction site <u>after normal hours of construction by climbing over the locked safety fences and rummaging through the construction site with absolutely no oversight.</u> (Emphasis added.) SUF 18.

In addition, Rick Tomaro, the Tsangs' contractor, stated in his declaration: "**… I have been noticing clear evidence that trespassers have been illegally coming onto the construction site and disturbing the soil and moving items around**." SUF 17 (emphasis added).

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

Unquestionably, the pleadings, discovery responses, motion practice and other extrinsic evidence show the Tsangs are actually or potentially alleging numerous claims sounding in bodily injury, property damage and personal injury, triggering State Farm's duty to defend plaintiff in the underlying action.

On December 1, 2016, Ms. Gdowski filed her answer to the cross-complaint, generally denying every material allegation in the cross-complaint, including allegations of intentional conduct. SUF 19. She further asserted that if any conduct harmed the Tsangs, such conduct was unintentional. SUF 20.

**B. The State Farm Insurance Policies**

State Farm issued two relevant insurance policies to Ms. Gdowski: State Farm Homeowners Policy No. 71-E8-6358-6 ("Homeowners Policy") and State Farm Personal Liability Umbrella Policy No. 71-C9-9004-9 ("Umbrella Policy") (collectively, "Policies"). SUF 21.

Ms. Gdowski has carried the Homeowners Policy since 1993 and the Umbrella Policy since 1990. SUF 21. The Policies were maintained in full force and effect during all relevant times. SUF 22. The Homeowners Policy provides a $100,000 limit per occurrence for "personal liability" coverage, which includes bodily injury and property damage liability coverage, with the cost of defense outside the policy limits. SUF 23, 27. The Umbrella Policy provides a $2,000,000 limit of liability, and a defense for loss not covered by any other policy but covered by the Umbrella Policy, with the cost of defense outside the policy limits. SUF 24, 25. The Policies are intended to provide defense and indemnity, among other coverages, to Ms. Gdowski and any other person who qualifies as an insured pursuant to the terms of the Policies. SUF 26.

1. <u>The Homeowners Policy</u>

The Homeowners Policy provides broad liability coverage. The Personal Liability coverage requires State Farm to defend and indemnify against claims of bodily injury or property damage liability:

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

> If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will: 1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and 2. provide a defense at our expense… (SUF 27.)

The Homeowners Policy includes the following definitions in pertinent part:

> "bodily injury" means physical injury, **sickness, or disease** to a person. This includes required care, loss of services and death resulting therefrom.
>
> "property damage" means **physical damage to or destruction of tangible property, including loss of use of this property**. (SUF 28, emphasis omitted and added.)

The Homeowners Policy also defines occurrence, in relevant part:

> "occurrence", when used in Section II of this policy, means an accident, including exposure to conditions, which first results in: a. bodily injury; or b. property damage; during the policy period. (SUF 29, emphasis omitted.)

The Homeowners Policy includes the following "intentional acts" exclusion, which does not extend to *mere allegations* of intentional conduct:

> Coverage L and Coverage M do not apply to: a. bodily injury or property damage: (1) which is either expected or intended by the insured; or (2) which is the result of willful and malicious acts of the insured... (SUF 30, emphasis omitted.)

2. <u>The Umbrella Policy</u>

The Umbrella Policy provides primary "Personal Liability" coverage where the basis of the suit against the insured is not covered by any other insurance

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

policy, but is covered by the Umbrella Policy. SUF 25, 31, 32. The Umbrella Policy provides excess coverage when the claim is covered by the Homeowners Policy. SUF 32. In this case, the Umbrella Policy covers "bodily injury" and "property damage" excess of the Homeowners Policy, SUF 27, 32, 33, and covers "personal injury" which is not covered by the Homeowners Policy. SUF 33, 27. Accordingly, the Umbrella Policy is primary for "personal injury" claims, requiring a defense for those claims as the primary coverage. SUF 25, 32, 33.

The Umbrella Policy requires State Farm to pay damages because of a "loss" for which the insured is legally liable and to which the policy applies. SUF 31. The Umbrella Policy includes the following definitions:

> "loss" means:
>
> a. an accident, … or
>
> b. **the commission of an offense which first results in personal injury** during the policy period.
>
> (SUF 33, emphasis omitted, added and supplied.)
>
> "personal injury" means injury other than bodily injury arising out of one or more of the following offenses:
>
> a. false arrest, false imprisonment, **wrongful eviction**, wrongful detention of a person;
>
> b. abuse of process, malicious prosecution;
>
> c. libel, slander, defamation of character; or
>
> d. **invasion of a person's right of private occupancy by physically entering into that person's personal residence**. (SUF 35, emphasis added and omitted.)

## C. State Farm Wrongfully Refused to Defend Ms. Gdowski

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

On or about June 24, 2016, Ms. Gdowski timely notified State Farm of the claims against her and requested a defense. SUF 36. On December 7, 2016, State Farm issued a denial of coverage, refusing to defend the claims in the cross-complaint under the terms of the Umbrella Policy. SUF 37. The underlying case was stayed on appeal for approximately 19 months, then after the Court of Appeal issued its decision in the underlying case, the defense was again tendered to State Farm on June 22, 2018. SUF 38. On July 17, 2018, State Farm again denied coverage under both Policies. SUF 38.

Ms. Gdowski made every effort to obtain State Farm's compliance with the terms of the Policies. The cross-complaint, the ex parte application and exhibits, the Tsangs' responses to form interrogatories, and multiple correspondence with an analysis of the coverage owed by State Farm were all provided to State Farm, but it continued to refuse a defense. SUF 39. Due to State Farm's denial, and its refusal to reverse its denial, Ms. Gdowski had no option but to file this action. SUF 40. State Farm filed its answer on January 25, 2019. SUF 41.

The parties, through counsel, met and conferred regarding this motion by telephone on February 21, 2019 and on February 27, 2019. Declaration of Randy Hess, ¶ 12. They were unable to come to agreement to avoid the need for the instant motion. *Id.*

## III. ARGUMENT

### A. Under Established California Law, State Farm Clearly Owed Ms. Gdowski a Defense to the Claims Asserted by the Tsangs

This matter is before the Court on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Federal courts sitting in diversity apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 427 (1996). Thus, California substantive law applies to Ms. Gdowski's claim that State Farm breached its duty to defend her in the underlying action.

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

State Farm has a duty to defend Ms. Gdowski because the cross-complaint, discovery responses, and ex parte application in the underlying action clearly establish a potential for coverage under one or both of the State Farm Policies. Under the law of California for the past 50 years, an insurer "must defend a suit which *potentially* seeks damages within the coverage of the policy." *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 275 (1966) (emphasis original).

An insurer "bears the duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy." *Gray*, *supra*, at 276-277. The "duty to defend is determined by reference to the policy, the complaint, *and all facts known to the insurer from any source*." *Montrose Chemical Corp v. Superior Court,* 6 Cal.4th 287, 300 (1993) (*"Montrose I"*), citing *Gray*, *supra*, at 276-277 (emphasis in original and added).

In evaluating the duty to defend, the focus is on the facts "rather than the formal theory of liability or cause of action pleaded." *Barnett v. Fireman's Fund,* 90 Cal.App.4th 500, 510 (2001); *and see CNA Cas. of California v. Seaboard Surety Co.,* 176 Cal.App.3d 598, 607 (1986). "Predicating coverage upon an injured party's choice of remedy or the form of action sought is not the law of this State." *Vandenberg v. Superior Court,* 21 Cal.4th 815, 840 (1999). Accordingly, "the legal theory asserted by the claimant is immaterial to the determination of whether the risk is covered." *Vandenberg, supra*, at 841, citing 9 Couch, Insurance (3d ed. 1997) § 126:3, p. 126-8.

A claim need not be specifically articulated as a separate cause of action to trigger an insurer's duty to defend. Rather, only a cursory allegation of a covered claim is sufficient, and the underlying plaintiff need not allege every element of a claim to trigger a defense duty. *Barnett, supra.; CNA v. Seaboard, supra,* at pp. 607-609. As the California Supreme Court has observed:

> "To prevail, the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such*

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

> *potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*. Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales. Any seeming disparity in the respective burdens merely reflects the substantive law." *Montrose I*, 6 Cal.4th at 300 (emphasis original).

Thus, under California law, insureds need only show that a claim **may** be covered, while "[i]nsurers have the more difficult burden of proving that the underlying claim ***cannot*** fall within policy coverage." *Ameron Intern. Corp. v. Insurance Co. of State of Pennsylvania*, 50 Cal.4th 1370, 1378 (2010) (emphasis original and added).

Against this backdrop, State Farm issued to Ms. Gdowski, and received premium dollars for, two liability insurance policies, Homeowners and Umbrella, either or both of which obligated State Farm to provide a defense. The Homeowners Policy affords a defense and coverage for "property damage" and "bodily injury" claims as described above. The Umbrella Policy affords primary coverage and defense for "personal injury" claims, including claims for wrongful eviction, and for invasion of the right of private occupancy, long established in California to include claims for trespass.

The allegations and claims made by the Tsangs – in pleadings, discovery and motions – all confirm the existence of claims potentially giving rise to coverage under one or both of the State Farm Policies. The undisputed facts also demonstrate that State Farm cannot establish conclusively that its intentional acts exclusion, or any exclusion, eliminates its defense duty.

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

**B. As a Matter of Law, State Farm Breached Its Duty to Defend Ms. Gdowski Under the Homeowners Policy**

1. <u>The Tsangs Make Multiple Factual Allegations Coming Within the "Property Damage" Coverage of the Homeowners Policy.</u>

"Property damage" under the Homeowners Policy includes both "physical damage to or destruction of tangible property" and "loss of use" of tangible property. SUF 28. The cross-complaint and ex parte application assert multiple claims coming within the definitions of "physical damage or destruction" and/or "loss of use."

First, the cross-complaint alleges a claim arising out of physical damage or destruction of tangible property. The Tsangs allege Ms. Gdowski caused damage to their roof so that it was beyond repair. SUF 4. Roof damage to the Tsangs' house, which allegedly compelled them to demolish their house, constitutes a claim arising out of physical damage and destruction of tangible property, which is clearly covered under the Homeowners Policy.

The California Supreme Court has specifically held that the term "property damage" broadly includes all claims for compensation brought against an insured "because of" property damage. *AIU Ins. Co. v. Superior Court (FMC Corp.)*, 51 Cal.3d 807, 828-829, and 842-43 (1990) (reimbursement of environmental response costs and injunctive relief are incurred "because of" property damage); see also *Insurance Co. of State of Pennsylvania v. American Safety Indemnity Co*., 32 Cal.App.5th 898, 914 (2019). In this case, the Tsangs seek to hold Ms. Gdowski liable for damages for lost rent, added construction expense and delays sustained "because of" property damage that forced them to move forward with the Project. SUF 4, 5, 6.

Second, loss of use of tangible property is alleged in the cross-complaint. The Tsangs claim they lost the use of their home as a result of Ms. Gdowski's alleged conduct. SUF 3, 5, 7. In particular, the Tsangs assert that the roof

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

damage, allegedly caused by Ms. Gdowski's conduct, forced the Tsangs to have to demolish their house and, in the process, lose the use of their premises. SUF 4, 5, 7. Further, the Tsangs maintain that Ms. Gdowski allegedly interfered with and delayed their ability to move back into their property. *Id*. This loss of use is expressly covered as "property damage" under the Homeowners Policy, triggering State Farm's duty to defend. SUF 28.

Third, the Tsangs' damage claims include allegations regarding conduct of Ms. Gdowski during the underlying litigation. SUF 17, 18. The Tsangs' ex parte application includes assertions (disputed by Ms. Gdowski) that Ms. Gdowski or her agents were "rummaging" through the Tsangs' property, "moving dirt and other items." SUF 17, 18. In support of the ex parte application, Rick Tomaro also declared that trespassers were illegally on the property disturbing soil and moving unspecified items around without oversight. SUF 17.

Undoubtedly, soil disturbance and "tampering" with the Tsangs' property/equipment during the litigation are encompassed by the cross-complaint and are claims for physical damage to tangible property. It is irrelevant that the Tsangs' cross-complaint does not specifically allege these facts, as the duty to defend requires consideration of "all facts known to the insurer from any source". *Montrose I*, *supra*, 6 Cal.4th at 300. Matters alleged in the application and supported by declarations under penalty of perjury must be considered.

Based on the undisputed facts available to State Farm, the Tsangs allege potentially covered claims for "property damage" under the Homeowners Policy because they claim both (i) direct physical damage to or destruction of the Tsangs' tangible property (to the roof of their house and on the construction site) and (ii) loss of use of tangible property (loss of use of their home due to Ms. Gdowski's alleged conduct); any or all of which trigger State Farm's duty to defend Ms. Gdowski against all claims asserted in the underlying action.

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

2. The Tsangs Make Factual Claims Coming Within the "Bodily Injury" Coverage of the Homeowners Policy.

The Homeowners Policy defines "bodily injury" as "physical injury, sickness or disease to a person…" SUF 28. By their interrogatory responses, the Tsangs make claims for covered "bodily injury." The Tsangs' interrogatory responses state they have "indeed suffered physical, mental or emotional injuries" as a result of Ms. Gdowski's alleged actions. SUF 11,12. "Physical injury", as used in the form interrogatory, includes any bodily injury, including sickness and disease. Thus, all three categories of "bodily injury" covered by the Homeowners Policy (physical injury, sickness or disease) are encompassed by the Tsangs' form interrogatory responses.

Further, Ms. Ying's interrogatory response affirms she has suffered other "health issues" attributable to Ms. Gdowski's conduct in addition to and beyond her claims for emotional distress. SUF 14. These "health issues" actually or potentially encompass conditions constituting physical injury, sickness or disease, any one of which constitutes covered "bodily injury" under the Homeowners Policy, triggering State Farm's duty to defend.

The fact that the Tsangs also claim emotional distress does not eliminate State Farm's duty to defend Ms. Gdowski against the claims for "physical injury" and "health issues". Under the Homeowners Policy, bodily injury coverage is not qualified by whether it arises out of or is related to emotional distress. Rather, the policy only purports to exclude coverage for emotional distress itself (except distress arising out of actual physical injury to some person). SUF 28. The Tsangs' interrogatory responses demonstrate conclusively that their claims encompass bodily injury, triggering a duty to defend under the Homeowners Policy on this additional independent basis.

3. The Claims Alleged Against Ms. Gdowski Constitute Multiple "Occurrences" Under the Homeowners Policy.

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

The preceding sections confirm the claims asserted by the Tsangs include covered claims for property damage, and covered claims for bodily injury. Undoubtedly, each of these claims was caused by an "occurrence." The Homeowners Policy defines "occurrence" as "an accident, including exposure to conditions, which first results in: a. bodily injury; or b. property damage; during the policy period." SUF 27, 29. (Emphasis omitted.) Further:

> "Under California law, the word 'accident' in the coverage clause of a liability policy refers to the *conduct of the insured* for which liability is sought to be imposed … ." ([*Delgado v. Interinsurance Exchange of Automobile Club of Southern California,* (2009) 47 Cal.4th 302], 311, italics added.) "[T]he term 'accident' is more comprehensive than the term 'negligence' and thus includes negligence (Black's Law Dict. [(5th ed. 1979),] p. 14, col. 2) … ." (*Safeco Ins. Co. v. Robert S.,* 26 Cal.4th 758, 765, (2001)[110 Cal. Rptr. 2d 844, 28 P.3d 889] (*Safeco*).) Accordingly, a policy providing a defense and indemnification for bodily injury caused by "'an accident'" "promise[s] coverage for liability resulting from the *insured's* negligent acts." (*Ibid.*, italics added.) *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Construction Co.*, 5 Cal. 5th 216, 221-222 (2018) ("*Ledesma"*).

Keeping in mind that the definition of "occurrence" includes unintended consequences and "exposure to conditions" (see *Ledesma, supra*), it is clear that the panoply of "property damage" and "bodily injury" damage claims against Ms. Gdowski come within this definition.

The Tsangs allege Ms. Gdowski engaged in a series of acts that (i) caused property damage to their roof, (ii) caused the Tsangs to have to vacate their property, (iii) "created a condition" that resulted in the Tsangs' loss of use of their residence, and (iv) caused them to suffer bodily injury. SUF 4, 5, 7-15.

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

In particular, in the cross-complaint, the Tsangs allege that Ms. Gdowski created a condition which denied the Tsangs the use and quiet enjoyment of their property and prevented them from moving into their home. SUF 7. The cross-complaint is replete with allegations asserting injuries caused by the combination of numerous alleged acts, including that (i) Ms. Gdowski "engaged in a calculated and relentless campaign to harass [the Tsangs] and their agents by repeatedly interfering with, and delaying, the Project, and to deprive [the Tsangs] of their ability to enjoy the use of their property", SUF 3, and (ii) Ms. Gdowski allegedly forced them "to incorporate so many versions of roof silhouettes…that the roof of the previous house was beyond repair leaving little choice for [the Tsangs] but to move forward with the new project." SUF 4.

These allegations constitute claims for damages for the "unintended consequences" of Ms. Gdowski's actions, and such "unintended consequences" come squarely within the policy definition of "occurrence." Indeed, coverage for unintended consequences of actions has long been recognized in California. As noted in *State Farm Fire and Casualty Co. v. Superior Court*, 164 Cal.App.4th 317, 306 (2008), the term "accident" may include instances in which "an injury is an unexpected or unintended consequence of the insured's conduct." Certainly, the unintended consequences of the conduct attributed to Ms. Gdowski, including the property damage and loss of use, are covered.

The same allegations against Ms. Gdowski also demonstrate a claim for "exposure to conditions", another component of covered "occurrences" under the Homeowners Policy. Again, the policy provides coverage for "an accident, including exposure to conditions…" These allegations show that all of the potential liability for property damage and bodily injury are the result of the Tsangs' exposure to conditions allegedly created by Ms. Gdowski.

The Tsangs' claims for property damage related to Ms. Gdowski's consultants' alleged "rummaging" through the site (SUF 18) is covered, as it

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

potentially results from an "accident" performed by Ms. Gdowski's agents. As the California Supreme Court confirmed in *Ledesma, supra*, negligent hiring and supervision constitute "accidents," and thus, "occurrences" under insurance policy definitions of "occurrence". *Ledesma*, at 229-230.

Moreover, California law recognizes insurance coverage for claims of negligent hiring, retention, or supervision *even when the employee acted intentionally*. *Ledesma*, 5 Cal. 5th at 229. "Absent an applicable exclusion, employers may legitimately expect coverage for such claims under comprehensive general liability insurance policies, just as they do for other claims of negligence." *Id*. at 230. The allegation that Ms. Gdowski's agents were causing damage to the Tsangs' construction site constitutes an accident or occurrence from the standpoint of Ms. Gdowski, giving rise to claims of property damage, coming squarely within the coverage of the Homeowners Policy.

The alleged actions of Ms. Gdowski in (i) engaging in actions that had the unintended consequences of causing alleged damage, (ii) allegedly exposing the Tsangs to conditions resulting in damage, and (iii) allowing her agents to enter the Tsangs' property and cause damage to property, all qualify as occurrences raising the potential for coverage under the policy.

4. <u>The Property Damage and Bodily Injury Alleged Are Not Excluded as Expected, Intended, Willful or Malicious.</u>

State Farm cannot escape its duty to defend based on its intentional acts exclusion. The Homeowners Policy excludes liability coverage for bodily injury or property damage: "(1) which is either expected or intended by the insured; or (2) which is the result of willful and malicious acts of the insured." SUF 30.

As an initial matter, the burden of proving that an exclusion bars coverage falls on the *insurer*. The insurer must conclusively prove that a policy exclusion applies in order to defeat coverage. *Clemmer v. Hartford Ins. Co.,* 22 Cal.3d 865, 880 (1978); *Bruce DeMay v. Interinsurance Exchange*, 32 Cal.App.4th

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

1133, 1137 (1995). Exclusions must be plain and clear in their wording. *Miller v. Elite Ins. Co.,* 100 Cal.App.3d 739, 751-752 (1990). Insurance policy exclusions are to be strictly construed against the insurer, in order to provide maximum coverage to the insured. *Cal Farm Ins. v. TAC,* 172 Cal.App.3d 564, 577 (1985); *State Farm v. Partridge,* 10 Cal.3d 94, 101-102 (1973). Moreover, when an insured disputes the factual basis of an exclusion, the insurer must provide a defense to the insured, regardless of whether the insurer believes the exclusion is applicable. *Amato v. Mercury Cas. Ins. Co.,* 18 Cal.App.4th 1784, 1792 (1993).

In this case, the factual bases for the exclusion are clearly disputed. In answering the cross-complaint, Ms. Gdowski denied all allegations, SUF 19, and she specifically denied that she intended to harm anyone. SUF 20. Because Ms. Gdowski denies that she engaged in intentional, willful or malicious conduct, she disputes the required factual basis of this exclusion, requiring State Farm to immediately supply a defense. See *Amato* at 1792.

Furthermore, the exclusion is not triggered by mere *allegations* of intentional, willful or malicious conduct; rather, the exclusion applies only when it is established that the conduct is actually intentional, willful or malicious. SUF 30. Of course, if Ms. Gdowski's actions are found to be merely negligent or reckless, the exclusion would not apply. Thus, the exclusion cannot eliminate the potential for coverage, and, therefore, does not obviate State Farm's duty to defend Ms. Gdowski against all claims. *See Montrose I*, 6 Cal.4th at 301, holding a disputed fact determinative of coverage, e.g., whether conduct was intentional, negligent or reckless (if at all), establishes a duty to defend.

Of course, the Tsangs might amend their cross-complaint to plead negligent or reckless conduct. An insurer cannot construct a "formal fortress of the third party's pleadings and retreat behind its walls." *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 275-277 (1966). "A duty to defend may exist, therefore, even

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

though the face of the complaint does not reflect a potential for liability under the policy. [Citation.] This is so because current pleading rules liberally allow amendment; the third party plaintiff cannot be the arbiter of coverage." *David Kleis, Inc. v. Superior Court* 37 Cal.App.4th 1035, 1045 (1995).

Finally, State Farm's exclusion only applies to actions of *the insured*. Any damage allegedly caused by Ms. Gdowski's agents (the consultants discussed in Section B.1 above), for which the Tsangs seek to hold Ms. Gdowski liable, cannot come within the scope of this exclusion.

In summary, State Farm had and has a duty to defend Ms. Gdowski under the terms of the Homeowners Policy, as the Tsangs have alleged bodily injury and property damage arising out of occurrences that are not excluded by the Policy, and no triable issue of material fact exists with respect to the duty to defend. Further, the undisputed facts show that State Farm refused to defend Ms. Gdowski, thus breaching its duty to defend.

Ms. Gdowski respectfully requests this Court enter partial summary judgment in her favor establishing (i) State Farm's duty, under the Homeowners Policy, to defend her against all claims asserted by the Tsangs, and (ii) State Farm's breach of the duty to defend under the Homeowners Policy.

**C. As a Matter of Law, State Farm Breached Its Duty to Defend Ms. Gdowski Under the Umbrella Policy**

State Farm also owes a defense to Ms. Gdowski pursuant to the Umbrella Policy for the Tsangs' claims sounding in "personal injury" as defined by that policy. The Umbrella Policy provides coverage for "personal injury" not covered by the Homeowners Policy. SUF 32, 33, 35, 27. As State Farm refused a defense under the Umbrella Policy, State Farm breached its duty to defend on this additional basis.

The Umbrella Policy provides primary coverage for, and an obligation to defend against, claims sounding in "personal injury." SUF 25, 32, 33. The

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

Umbrella Policy defines "personal injury" to mean injury other than "bodily injury" arising out of one or more listed offenses, including "wrongful eviction" and "invasion of a person's right of private occupancy by physically entering into that person's personal residence." SUF 35.

Unlike the Homeowners Policy, the Umbrella Policy carries no requirement that the personal injury claim arise from an "occurrence" or "accident". SUF 31, 33-35. Indeed, "'personal injury' coverage is *not* determined by the nature of the damages sought in the action against the insured, but by the nature of the claims made against the insured in that action." *Martin Marietta v. Ins. Co. of North America,* 40 Cal.App.4th 1113, 1125 (1995). The listed offenses "should be construed broadly to encompass all specific torts which reasonably could fall within the general category." *Id.*, quoting *Fibreboard Corp. v. Hartford,* 16 Cal.App.4th 492, 515 (1993). "California courts have construed 'wrongful entry or eviction' as applying to tort claims arising out of the interference with an interest in real property, such as trespass, nuisance, and noninvasive interferences with the use and enjoyment of property." *Stonelight Tile, Inc. v. Cal. Ins. Guar. Ass'n*, 150 Cal. App. 4th 19, 39 (2007).

The Tsangs allege claims constituting "wrongful eviction" and "invasion of a person's right of private occupancy", triggering State Farm's duty to defend under the Umbrella Policy.

1. <u>The Tsangs Allege Facts Supporting a Claim for Wrongful Eviction.</u>

In their cross-complaint, the Tsangs allege that Ms. Gdowski forced the Tsangs to move out of their property. SUF 4, 5, 7. They maintain that she kept the Tsangs out of their property by causing years of construction delay. SUF 5, 7, 9, 10. These allegations establish a claim for "wrongful eviction." Importantly, the Umbrella Policy does not define the term "wrongful eviction." When a policy

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

does not define a term, the term is first given its "plain meaning," and the reasonable expectations of the insured are given effect. *Powerine Oil Co. Inc. v. Sup. Ct.*, 37 Cal.4th 377, 404 (2005). "If the *meaning a layperson would ascribe to the language* of a contract of insurance is clear and unambiguous, a court will apply that meaning." *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal.4th 645, 666–667 (1995) (Emphasis added). Plain meaning can be determined from dictionary definitions, internet searches, and common usage. *MacKinnon v. Truck Ins. Exch.*, 31 Cal.4th 635, 651-654 (2003). Further, insurance coverage is "interpreted broadly so as to afford the greatest possible protection to the insured." *MacKinnon*, 31 Cal.4th at 648, *quoting White v. Western Title Ins. Co.* 40 Cal.3d 870, 881 (1985).

With respect to wrongful eviction, in *Cunningham v. Universal Underwriters,* 98 Cal.App.4th 1141, 1149 (2002), the court stated:

> The term "evict" means "[t]o expel ... by legal process; put out"; **"[t]o force out;** eject; dispossess"; "[t]o recover (property, for example) by a superior claim or legal process." American Heritage Dict. (new college ed. 1981) pp. 454-455. (Emphasis added.)

*Cunningham* highlights that the common understanding of an eviction is to force someone out of that person's property. The Cambridge Dictionary defines the verb "evict" to mean "to force someone to leave somewhere" or "to force someone to move out of a property." *Cambridge English Dictionary*, *www.dictionary.cambridge.org/us/dictionary/english/evict*. The Collins Dictionary states, "If someone is evicted from the place where they are living, they are forced to leave it." *Collins English Dictionary*, *www.collinsdictionary.com /us/dictionary/english/evict*. A layperson understands eviction to occur when someone is forced out of their home, no matter the means used or the capacity of the person to force the move.

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

As the Umbrella Policy does not define "eviction" or "wrongful eviction," the layman's understanding of being forced out of one's property wrongfully must apply. The Policy requires no showing of legal process for an eviction to occur. Even landlord/tenant law recognizes a constructive wrongful eviction when property is rendered unusable for the purposes for which it is occupied, resulting in a *de facto* eviction. See *Sanders v. Allen,* 83 Cal.App.2d 362, 366 (1948); see also *The Free Dictionary*, *www.thefreedictionary.com /constructive+eviction*: a constructive eviction occurs "when, through no fault of the tenant, the premises are rendered unusable for the purposes for which they were leased, resulting in the de facto equivalent of an eviction."

The Tsangs allege that Ms. Gdowski's conduct rendered the Tsangs' dwelling unusable and forced the Tsangs to vacate the premises. The cross-complaint further alleges that Ms. Gdowski's actions prevented them from returning to their residence. Because the cross-complaint includes facts supporting a claim for wrongful eviction under multiple dictionary definitions, State Farm owed and owes a duty to defend under the Umbrella Policy.

2. <u>The Tsang Cross-Complaint Encompasses a Claim for Invasion of the Right of Private Occupancy</u>.

The Tsangs' ex parte application also confirms that they contend Ms. Gdowski invaded their right of private occupancy. SUF 16-18. The Umbrella Policy covers claims for "invasion of a person's right of private occupancy by physically entering into that person's personal residence." The cross-complaint clearly asserts claims for damages resulting from Ms. Gdowski's alleged wrongful acts in the underlying action. The Tsangs claim that during the litigation of the underlying action, Ms. Gdowski or her agents trespassed onto the Tsangs' property by entering into the construction site. SUF 16-18. In other words, the Tsangs claim that Ms. Gdowski and/or her consultants physically entered the grounds that are part of the Tsangs' personal residence.

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

State Farm's contention that entry into a "personal residence" only means entry into a house, and not the grounds that are part of the premises, has no merit. Just as the Umbrella Policy does not define the term "wrongful eviction", the Umbrella Policy fails to define the phrase "personal residence". Thus, the rules of construction cited with respect to "wrongful eviction" also apply here.

The Cambridge Dictionary includes the following definition of "residence": "the place where someone lives." *The Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/residence*. The focus is on the *place*, not the four walls that make up a dwelling structure. A layperson would naturally understand a "personal residence" to include the grounds on which a dwelling rests. People commonly think of their residence as not just the house, but the grounds and amenities around the house, including a yard, pool, sports court or garden. Perimeter fences and privacy walls typically integrate the house, grounds and amenities in delineating what makes up a private residence. One typically thinks of a "residence" as the totality of the place where one resides, including the grounds.

Nothing in the Umbrella Policy equates physical entry into a personal residence as limited to entry into a house or dwelling. In fact, the Umbrella Policy confirms otherwise. The Umbrella Policy requires the insured to maintain "Personal Residential Liability" insurance, which the Umbrella Policy defines as providing "coverage for liability arising out of the ownership, maintenance or **use of a premises as your residence**." (Emphasis added.) Webster's Online Dictionary defines "premises" as "a tract of land with buildings thereon" or a building and its grounds. *Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/premises*. Neither "residence" nor "premises" is, under any definition, limited to a building or structure.

Further, the United States Supreme Court has long held that the right of private occupancy is the right of a property owner **to exclude others from**

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

**property reserved by the owner for his private use.** *Nollan v. California Coastal Com'n,* 483 U.S. 825, 831 (1987) ["We have repeatedly held that, as to property reserved by its owner for private use, 'the right to exclude [others is] 'one of the most essential sticks in the bundle of rights that are commonly characterized as property.'[citation omitted]."] This explanation confirms that where there is a right to exclude others, there is a right of private occupancy.

In the context of the "personal injury" coverage under the Umbrella Policy, invasion of the right of private occupancy of a personal residence would include physical entry into any area as to which the person is entitled to claim a right of *private occupancy*. Certainly, the Tsangs have a complete right of private occupancy to their entire residence, including the dwelling, any outbuildings, and the grounds or land that are part of the residence.

If State Farm sought to limit coverage for invasion of the right of private occupancy only to a physical intrusion into a person's house, it could have used the word "house" or "dwelling" or even "building." A "dwelling" specifically refers to "a shelter (such as a house) in which people live." See *Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/dwelling*. Instead, State Farm used the broader term "residence", which is not specifically limited to a house or dwelling, and which includes the grounds.

Of course, to the extent the term "residence" is ambiguous, in the sense that it is susceptible of two or more reasonable interpretations, the meaning that affords a defense and coverage prevails. *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.,* 5 Cal. 4th 854, 867 (1993).

> If there is ambiguity, however, it is resolved by interpreting the ambiguous provisions in the sense the promisor (i.e., the insurer) believed the promisee understood them at the time of formation. (Civ.Code, § 1649.) **If application of this rule does not eliminate the ambiguity, ambiguous language is construed against the**

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM

**party who caused the uncertainty to exist**. *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 1264 (1990) (emphasis added).

The undisputed facts available to State Farm show that Ms. Gdowski is potentially liable for conduct claimed to be an invasion of the Tsangs' right of private occupancy by physically entering the Tsangs' personal residence. Unquestionably, the Tsangs' claim involves an alleged invasion of the right to exclude others from property reserved for their private use. State Farm was obligated to defend Ms. Gdowski against such claims. On this further ground, State Farm owed and owes Ms. Gdowski a defense under the Umbrella Policy.

State Farm refused unequivocally to extend a defense to any of the claims under the Umbrella Policy, SUF 37-39, thus breaching its duty to defend. Ms. Gdowski respectfully requests partial summary judgment be entered in her favor, finding State Farm owed and breached a duty to defend her under the Umbrella Policy.

## IV. CONCLUSION

Ms. Gdowski has pointed to undisputed facts and policy language that (i) claims for bodily injury, property damage, and personal injury are actually or potentially asserted by the Tsangs, (ii) State Farm cannot establish conclusively that such claims are excluded, and (iii) State Farm unequivocally refused a defense. Ms. Gdowski requests an order granting partial summary judgment in her favor, finding that State Farm has breached its duty to defend under the Homeowners Policy and/or the Umbrella Policy.

Dated: June 21, 2019

ADLESON, HESS & KELLY, APC

By: /s/ Randy M. Hess

Randy M. Hess
Nicole S. Adams-Hess
Attorneys for Plaintiff Diana Gdowski

ADLESON, HESS & KELLY, APC
577 SALMAR AVE., 2D FL.
CAMPBELL, CA 95008
(408) 341-0234
FAX (408) 341-0250
WWW.AHK-LAW.COM