UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Diana Gdowski, an individual,<br>Plaintiff,<br>v.<br>State Farm General Insurance Company and Does 1 through 10, inclusive,<br>Defendant. | Case No. 2:18-cv-10596-AB (RAOx)<br>**ORDER DENYING PLAINTIFF DIANA GDOWSKI'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT STATE FARM INSURANCE COMPANY** |

Before the Court is a Motion for Partial Summary Judgment as to Breach of Duty to Defend ("Motion," Dkt. No. 20) filed by Plaintiff Diana Gdowski ("Plaintiff" or "Gdowski"). Defendant State Farm Insurance Company ("Defendant" or "State Farm") filed an Opposition and Request for Partial Summary Judgment in Favor of State Farm ("Opposition," Dkt. No. 25), and Plaintiff filed a Reply ("Reply," Dkt. No. 26). On August 30, 2019, the Court held a hearing on this matter. Both counsel for Plaintiff and Defendant were present. At the hearing, the Court allowed Plaintiff to submit a supplemental brief regarding the Personal Liability Umbrella Policy ("Supp. Brief," Dkt. No. 34), and Defendant to submit a responsive brief. For the following reasons, the Court **DENIES** Plaintiff's Motion and **GRANTS** summary judgment in

favor of Defendant.

## I. BACKGROUND

This is an insurance coverage dispute. The following facts are undisputed.

### A. The Underlying Actions

#### 1. The Gdowski v. Tsang Complaint

On December 23, 2015, Gdowski filed suit against Wayne K. Tsang and Bonni C. Ying, individually and as trustees of the Tsang Family Trust Dated 6/6/99 (collectively referred as the "Tsangs") as well as others for specific performance. (SUF 1, 43.) Gdowski subsequently filed a First Amended Complaint (the "Complaint") for specific performance, breach of contract and nuisance. (SUF 43; Dkt. No. 20-14, Hess Decl., Exh. 1 at 5.)

According to the Complaint, Gdowski and the Tsangs own properties in Palos Verdes Estates (the "City"), with Gdowski's property located downslope from the Tsangs' property. (SUF 44; Hess Decl., Exh. 1 at 5.) Gdowski's complaint alleges a history of drainage and flooding problems originating from the Tsang property. (*Id.*) The complaint further alleges in that 2011, the Tsangs began constructing a new home on the subject property and as part of that construction, applied and obtained compatibility and grading approval from the City. (*Id.*) Gdowski allegedly opposed the application on a number of grounds including the contention that the Tsangs did not adequately address existing drainage properly. (*Id.*) After approval by the City, Gdowski appealed. (*Id.*)

When the City heard the appeal in July 2011, Gdowski alleges the Tsangs offered to work with Gdowski's drainage consultant to resolve her objections. (SUF

45; Hess Decl., Exh. 1 at 5.) After allegedly agreeing to incorporate Gdowski's engineer's drainage system recommendations, the Tsangs sent Gdowski a revised drainage plan that allegedly omitted significant details from the previously agreed to drainage plan. (*Id.*) The Tsangs then began construction. (*Id.*)

In August 2015, Gdowski alleges that the modifications severely compromised the function of the overall drainage system. (SUF 46; Hess Decl., Exh. 1 at 5.) Although Gdowski requested the problems with the drainage system be addressed, the Tsangs allegedly refused to alter their plans, thus breaching their oral contract with her. (*Id.*) Gdowski alleges that she will suffer irreparable injury unless the terms of the original oral contract are enforced. (*Id.*)

**2. The Tsangs' Cross-Complaint**

On July 6, 2016, the Tsangs filed a cross-complaint against for Gdowski for: (1) Declaratory Relief; (2) Intentional Nuisance; and (3) Fraud and Intentional Deceit (the "Cross-Complaint"). (SUF 1; Dkt. No. 20-6.) The Cross- Complaint alleges, in part:

1. After the Tsangs began a project to replace their home with a newly constructed home, "Gdowski has engaged in a calculated and relentless campaign to harass [the Tsangs] and their agents by repeatedly interfering with, and delaying the Project, and to deprive [the Tsangs] of the ability to enjoy the use of their Property. Gdowski has repeatedly made unreasonable demands on [the Tsangs] along with affirmative misstatements of facts with accompanying implied and express threats of litigation, and has yelled at …Ying when she was simply on the Property." (SUF 2-3; 47.)

2. Gdowski "demanded [the Tsangs] changed their project on numerous

occasions, and threatened them with litigation if they did not comply." (SUF 4; 50.)

3. Gdowski's "constant harassment and demands made over the fence between their property and from other locations near the Property, as well as her intentional interference with the construction" has interfered with the Tsangs use of their property. (SUF 52.)

4. Gdowski "engaged in other actions which significantly delayed the Project and caused the Tsangs to incur a tremendous amount of money and time delays, as well as causing them stress and anxiety." (SUF 6.)

5. Gdowski "has created a condition whereby [the Tsangs] have been denied their right to use and/or enjoy their Property. They should have been able to move in, and not be under the constant threats and harassment from Gdowski, but they have not been able to, due directly to Gdowski's actions." (SUF 7.)

6. Gdowski "was well aware of the fact that the Project involved [the Tsangs'] primary family residence, that [they] had young children at the commencement of the Project, and that any delays in the Project would significantly increase the cost of the Project as well as deprive [the Tsangs] and their once young children from living at their primary family residence." (SUF 10.)

Relief requested in the Cross-Complaint includes a declaration that in the event Gdowski's claim for specific performance is not denied and the drainage system does not work properly, Gdowski will defend, indemnify and hold the Tsangs harmless for any resulting loss and costs associated with Gdowski's engineer's recommendations. (SUF 56.) The Tsangs also seek general, compensatory and consequential damages as

well as punitive damages for, among other things, the increased cost of construction, loss of enjoyment, loss rental income, and mental and emotional distress. (*Id.*)

**3. The Tsangs' Ex-Parte Application**

Prior to filing the Cross-Complaint, the Tsangs filed an ex-parte application in the Action, requesting the termination of two April 2016 court orders, or in the alternative, a modification of the orders. (SUF 16; Dkt. No. 20-7.) In support of the application, the Tsangs' counsel provided a declaration regarding "trespassers that were breaking into the construction site after-hours by climbing the large, locked fence." (SUF 18.) The declaration alleged that Gdowski or her agents had gone onto the Tsangs' property "after normal hours of construction by climbing over the locked safety fences and rummaging through the construction site with absolutely no oversight." (*Id.*) The general contractor for the project also submitted a declaration in support of the application, stating he had noticed "clear evidence that trespassers have been illegally coming onto the construction site and disturbing soil and moving items around." (SUF 17.)

**B. The Insurance Policies Issued by State Farm**

State Farm issued two relevant insurance policies to Gdowski: State Farm Homeowner's Policy No. 71-E8-6358-6 (the "Homeowner Policy") and State Farm Personal Liability Umbrella Policy No. 71-C9-9004-9 (the "Personal Liability Umbrella Policy") (collectively, "Policies"). (SUF 21.) The Homeowner Policy was effective for the period from December 7, 2015 to December 7, 2015. (SUF 23.) The Personal Liability Umbrella Policy was effective for the period from September 11, 2015 to September 11, 2016. (SUF 24.)

**1. The Homeowner Policy**

State Farm issued a Homeowner Policy to Gdowski effective December 7, 2015, to December 7, 2016 ("Homeowner Policy"). (SUF 21, 23.) Pursuant to the Homeowner Policy:

> If a claim is made or a suit is brought against an insured for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will: 1. pay up to our limit of liability for the damagers for which the insured is legally liable; and 2. provide a defense at our expense…. (SUF 27) (emphasis in original).

The Homeowner Policy includes the following definitions:

> 1. "**bodily injury**" means physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom. Bodily injury does not include:
>
> a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any insured to any other person;
>
> b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any insured to any other person; or
>
> c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

…

> 8. "**property damage**" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any insured is not property damage.

…

> 7. "**occurrence**", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:
>
> a. bodily injury; or
>
> b. property damage;

> during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence.

(Dkt. No. 20-4; Gdowski Decl., Exh. 2) (emphasis in original).

The Homeowner Policy also contains the following exclusion:

> 1. Coverage L and Coverage M do not apply to:
>
> a. **bodily injury** or **property damage**:
>
> (1) which is either expected or intended by the insured; or
>
> (2) which is the result of willful and malicious acts of the insured

(*Id.*) (emphasis in original).

To trigger a duty to defend, the Homeowner Policy requires an occurrence meaning an accident, which resulted in property damage or bodily injury, as defined by the Homeowner Policy that is not otherwise excluded. (SUF 27-30.)

**2. The Personal Liability Umbrella Policy**

State Farm also issued a Personal Liability Umbrella Policy to Gdowski, effective September 11, 2015, to September 11, 2016 ("Personal Liability Umbrella Policy"). (SUF 21, 24.) The Personal Liability Umbrella Policy provides that a defense will be provided:

> If a suit is brought against any insured for damages because of a **loss** to which this policy applies…when the basis for the suit is a **loss** that is not covered by any other insurance policy but is covered by this policy. (SUF 25) (emphasis in original).

The Personal Liability Umbrella Policy includes the following definitions:

7. "**loss**" means:

a. an accident, including accidental exposure to conditions, which first results in **bodily injury** or **property damage** during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **loss**; or

b. the commission of an offense which first results in **personal injury** during the policy period. A series of similar or related offenses is considered to be one **loss**.

…

2. "**bodily injury**" means physical injury, sickness or disease to a person, including death resulting therefrom. Bodily injury does not include:

a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any insured to any other person;

b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any insured to any other person;

c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury or any resulting physical injury unless it arises out of actual physical injury to some person; or

d. **personal injury**.

…

8. "**personal injury**" means injury other than bodily injury arising out of one or more of the following offenses:

a. false arrest, false imprisonment, wrongful eviction, wrongful detention of a person;

b. abuse of process, malicious prosecution;

c. libel, slander, defamation of character; or

d. invasion of a person's right of private occupancy by physically entering into that person's personal residence.

(Dkt. No. 20-5; Gdowski Decl., Exh. 3) (emphasis in original).

Like the Homeowner Policy, the Personal Liability Umbrella Policy also includes the following exclusion for:

> 14. **bodily injury** or **property damage** which is:
>
> a. either expected or intended by the insured; or
>
> b. the result of any willful and malicious act of the insured

(*Id.*) (emphasis in original).

As a result, to trigger a duty to defend, the Personal Liability Umbrella Policy requires: (1) a loss meaning an accident, which resulted in property damage or bodily injury, as defined by the Personal Liability Umbrella Policy that is not otherwise excluded; or (2) the commission of one of the enumerated offenses that results in something other than bodily injury that is not otherwise excluded. (SUF 33-35.)

**C. The Tender to State Farm and Current Action**

On or about June 24, 2016, Gdowski timely notified State Farm of the claims against her and requested a defense. (SUF 36.) On December 7, 2016, State Farm issued a denial of coverage, refusing to defend the claims in the cross-complaint under the terms of the Personal Liability Umbrella Policy. (SUF 37.) On June 22, 2018, the defense was again tendered to State Farm under both the Homeowner and Personal Liability Umbrella policies. (SUF 38.) On July 17, 2018, State Farm denied coverage under both Policies. (SUF 38.)

After State Farm's denial, and its refusal to reverse its denial, Gdowski filed this action alleging breach of contract and breach of the implied covenant of good faith and fair dealing. (SUF 40.) State Farm filed its answer on January 25, 2019.

(SUF 41.) The parties, through counsel, met and conferred regarding this motion by telephone on February 21, 2019 and on February 27, 2019. (Hess Decl., ¶ 12.) They were unable to come to agreement to avoid the instant motion. (*Id.*)

## II. LEGAL STANDARD

A motion for summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmoving party will have the burden of proof at trial, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Id*. The nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in the nonmoving party's favor. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson*, 477 U.S. at 255). Nevertheless, inferences are not drawn out of thin air, and it is the nonmoving party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v.*

*Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

## III. DISCUSSION

### A. Applicable California Law

"The interpretation of an insurance policy, as applied to undisputed facts, is a question of law." *Cort v. St. Paul Fire & Marine Ins. Companies, Inc.*, 311 F.3d 979, 982 (9th Cir. 2002). A liability insurer "owes a broad duty to defend its insured against claims that create a potential for indemnity." *Montrose Chem. Corp. v. Superior Court*, 6 Cal.4th 287, 295 (1993) (emphasis added). The duty to defend may exist even when coverage is in doubt and/or no damages are ultimately awarded: "[t]he duty arises on tender of defense and continues until the underlying lawsuit is concluded or until the insurer establishes, by reference to undisputed facts, the absence of any potential for coverage." *El–Com Hardware, Inc. v. Fireman's Fund Ins. Co.*, 92 Cal.App.4th 205, 213 (2001) (citing *Montrose*, 6 Cal.4th at 300) (emphasis added). If the underlying complaint "can by no conceivable theory raise a single issue which could bring it within the policy coverage," then there is no duty to defend. *La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co.*, 9 Cal. 4th 27, 39 (1994), *as modified* (Mar. 2, 1995) (citation omitted). For example, "the insured could not reasonably expect protection under an automobile insurance policy for injury which occurs from a defect in a stairway." *Id.* (citing other examples). "The duty to defend is determined by comparing the allegations of the third party complaint with the terms of the policy. Facts extrinsic to the complaint known to the insurer at the inception of the third party lawsuit may also give rise to a duty to defend when they reveal a possibility the policy may cover the claim." *El–Com Hardware, Inc.*, 92 Cal. App. 4th at 212–13.

**B. Defendant has no duty to defend Plaintiff against the Tsang Counterclaim**

Plaintiff argues that "the pleadings, discovery responses, motion practice and other extrinsic evidence show the Tsangs are actually or potentially alleging numerous claims sounding in bodily injury, property damage and personal injury, triggering State Farm's duty to defend plaintiff in the underlying action." (Dkt. No. 20, Mot. at 6.)

"Whether an insurer has a duty to defend 'depends in the first instance, on a comparison between the allegations of the complaint and the terms of the policy.' " *S.B.B.C., Inc. v. St. Paul Fire & Marine Ins. Co.*, 186 Cal. App. 4th 383, 388 (2010) (citation omitted). " 'If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage. On the other hand, if, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance.' " *Id*. Thus, the "duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy." *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 19 (1995).

The "duty to defend depends on facts in the complaint." *Waller*, 11 Cal. 4th at 25. Uncertainty as to the legal interpretation of a policy term will not create a potential for coverage. Thus, "where [the] only potential for liability turns on resolution of [a] legal question, there is no duty to defend." *Id*. at 25-26. "In an insurance coverage action, the insured has the burden to prove that the claim falls within the basic scope of coverage." *Pan Pac. Retail Prop., Inc. v. Gulf Ins. Co.*, 471 F. 3d 961, 970 (9th Cir. 2006.) (cit. omitted); *see Aydin Corp. v. First State Ins. Co.*,

18 Cal. 4th 1183, 1188 (1998).

**1. There is no duty to defend under the Homeowner Policy**

Plaintiff argues that State Farm has a duty to defend Plaintiff against the Tsangs' Cross-Complaint for three reasons: (1) because the Tsangs allege facts constituting "property damage" as defined and covered by the Homeowner Policy; (2) because the Tsangs allege facts constituting "bodily injury" as defined and covered by the Homeowner Policy; and (3) because the Tsangs' claims for property damage and bodily injury were caused by an "occurrence" as defined in the Homeowner Policy. (Mot. at 12-15.)

Defendant argues that: (1) there was no conduct alleged that could constitute an occurrence as defined in the policy; (2) there was no property damage alleged; and (3) there was no bodily injury alleged. (Oppn. at 10-16.)

To trigger a duty to defend, the Homeowner Policy requires an occurrence defined as "an accident, including exposure to conditions" which resulted in property damage or bodily injury, as defined by the Homeowner Policy that is not otherwise excluded. (SUF 27-30.)

The requirement of an "accident," in the insuring agreement is standard throughout the industry. *Dyer v. Northbrook Property & Casualty Ins. Co.*, 210 Cal.App.3d 1540, 1547 (1989). Thus, the controlling issue is whether the Tsangs were injured as a result of an "accident." *Commercial Union Ins. Co. v. Superior Court*, 196 Cal.App.3d 1205, 1209 (1987). Because the requirement of an "occurrence," or "accident," is contained within the insuring agreement, the insured has the burden of establishing that an action seeks the recovery of covered damages

arising from out of an “accident,” or “occurrence.” *Waller v. Truck Ins. Exch. Inc.*, 11 Cal.4th 1, 44 (1995).

California law defines “accident,” as, “an unexpected unforeseen or undersigned happening or consequence from either a known or unknown cause.” *Hogan v. Midland National Ins. Co.*, 3 Cal.3d 553, 559 (1970). “An injury-producing event is not an ‘accident’ within the policy’s coverage language when all of the acts, the manner in which they were done, and the objective accomplished occurred as intended by the actor.” *Delgado v. Interinsurance Exchange of the Automobile Club of Southern California*, 47 Cal.4th 392, 304-305 (2009).

Gdowski’s conduct as alleged in the Tsangs’ Counter-Claim is not an unexpected “happening or consequence from either a known or unknown cause”. *See Hogan*, 3 Cal. 3d at 559. Rather, the Tsangs alleged that Gdowski “repeatedly inserted herself into the construction process”, made demands regarding the construction of the home’s roofing and drainage system, “directed” the Tsangs’ workers, and yelled at and harassed the Tsangs and their workers. (SUF 3, 7, 9-10.) The Tsangs allege that these actions by Gdowski resulted in delay of completion of the project, increased construction costs, loss of rental fees, loss of the Tsangs’ ability to use the home, and stress and anxiety. (SUF 7, 9-10.)

Gdowski argues that these are in fact “occurrences” because the Tsangs’ lengthier, more expensive construction and inability to use their home, for instance, were “unintended consequences of Ms. Gdowski’s actions, and such ‘unintended consequences’ come squarely within the policy definition of ‘occurrence’.” (Mot. at 16.) Yet Gdowski fails to address that while the results of her actions may have been unintended consequences, they were unintended consequences of her intentional

conduct to insert herself into the Tsangs' construction project. There was no accident that caused the Tsangs' injury, and as such, there was no "occurrence" as required under the Homeowner Policy.

Because none of the facts alleged in the Tsangs' Cross- Complaint constitute an "occurrence" as defined by the Homeowner Policy, State Farm has no duty to defend Plaintiff in the underlying action under the Homeowner Policy.

**2. There is no duty to defend under the Personal Liability Umbrella Policy**

Plaintiff argues that State Farm also had a duty to defend her against the Tsangs' Counter-claim under the Personal Liability Umbrella Policy because this policy provides coverage and defense for claims sounding in "personal injury," which is defined as "injury other than bodily injury arising out of one or more listed offenses, including wrongful eviction and invasion of a person's right of private occupancy by physically entering into that person's personal residence." (Mot. at 19-20.)

Defendant argues that none of Gdowski's actions as alleged in the Tsangs' Counter-Claim constitute a wrongful eviction or invasion of a person's right to private occupancy, and so the Counter-Claim did not give rise to a duty to defend. (Oppn. at 17-20.)

The Personal Liability Umbrella Policy provides a defense for a "loss" defined as an accident which results in bodily injury or property damage. (SUF 33.) As discussed above in the context of the Homeowner Policy, the conduct alleged in the Tsangs' Counter-Claim does not constitute an "accident." Therefore, there can be no duty to defend under this first definition.

The Personal Liability Umbrella Policy also provides a defense for a loss defined as "the commission of an offense which first results in personal injury during the policy period." (SUF 33.) The policy defines "personal injury" as "injury other than bodily injury arising out of one or more" of specified offenses. (SUF 35.) These offenses include (1) "false arrest, false imprisonment, wrongful eviction, wrongful detention of a person;" and (2) "invasion of a person's right of private occupancy by physically entering into that person's personal residence." (*Id.*)

**a. No Wrongful Eviction**

The Cross-Complaint alleges that due to Plaintiff's conduct, the construction of the Tsangs' new home was delayed and that during the prolonged period of construction, they had to move out of their property. (SUF 5-7.) Plaintiff argues that this allegation that the Tsangs had to move out of their property constitutes a wrongful eviction. (Mot. at 21.) Defendant argues that it does not. (Oppn. at 17.)

While the term "wrongful eviction" is not defined, the absence of a definition in the policy does not mean that the term is ambiguous. *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal.4th 854, 866 (1993). "[R]eliance on common understanding of language is bedrock," (*Id*. at 867) and "[i]f the meaning a layperson would ascribe to the language of a contract is clear and unambiguous, a court will apply that meaning." *Montrose, supra* at 666-667. Courts will avoid tortuous and illogical interpretation of policy terms. *Penn-America Ins. Co. v. Mike's Tailoring*, 125 Cal.App.4th 884, 886 (2005).

Plaintiff argues that "the common understanding of an eviction is to force someone out of that person's property," and quotes *Cunningham v. Universal*

*Underwriters*, 98 Cal. App. 4th 1141 (2002), where the court stated:

> The term "evict" means "[t]o expel…by legal process; put out"; "[t]o force out; eject; dispossess"; "[t]o recover (property, for example) by a superior claim or legal process."

(*Id*. at 1149) (internal citations omitted).

Yet even this definition includes language about a legal process and forcing someone out due to a superior claim. Here, the facts alleged in the Tsangs' Counter-Claim are that Plaintiff inserted herself into their construction process, thereby delaying the completion of their new home and forcing them to remain living outside of their home for a longer amount of time than they otherwise would have. This does not amount to a wrongful eviction as a layperson would understand the term.

Plaintiff also argues that this could be a constructive wrongful eviction, or a *de facto* eviction, as recognized under landlord/tenant law. Yet Plaintiff was not the Tsangs' landlord, and accordingly the landlord/tenant case and the freedictionary.com definition that Plaintiff cites to as authority are irrelevant to the case at hand.

At the August 30th hearing, Plaintiff argued that courts have found interference by a neighbor to constitute wrongful eviction, and that Plaintiff would submit supporting case law in her supplemental brief. Yet none the four cases Plaintiff submits to the court do so. (Supp. Brief at 1-3.) Rather, all four cases involve analysis of whether an intrusion constitutes a "wrongful entry" or "invasion of right to private occupancy." (Id.)

**b. No Invasion of Right to Private Occupancy**

The Tsangs' Ex-Parte Application in the underlying suit alleges that Plaintiff or her agents trespassed onto the Tsangs' property by entering onto the construction site

at night during the litigation of the underlying action. (SUF 16-18.) Plaintiff argues that this allegation shows that the Tsangs claim Plaintiff invaded their right to private occupancy. (Mot. at 22.) Defendant argues that it does not.

Defendant has a duty to defend Plaintiff against offenses that involve the "invasion of a person's right of private occupancy by physically entering into that person's personal residence". (SUF 35.) This offense has been described as a "physical invasion of an interest in property" which "disrupts the ability of a landowner to actually occupy his property.' ". *General Accident Ins. Co. v. West American Ins. Co.*, 42 Cal.App.4th 95, 104-105 (1996).

The Ex-Parte Application does not allege that Plaintiff entered into the Tsangs' personal residence and thereby "disrupted [the Tsangs'] ability to actually occupy the residence". *See id*. Rather, the conduct alleged is that Gdowski and/or her agents entered the construction site after hours and rummaged through the construction site and materials. (SUF 17-18.) The Tsangs do not claim that Gdowski or her agents entered into their personal residence. (SUF 16-17.) Nor do the Tsangs claim that Gdowski's trespass onto their construction site interfered with their right to occupy the property. (Id.)[1] In fact, it appears this conduct allegedly occurred when the Tsangs were neither at the property nor residing there. (SUF 18.)

At the August 30th hearing, Plaintiff argued that similar instances of a person trespassing onto a neighbor's uninhabited construction site were found by courts to constitute an invasion of right to private occupancy. In her Supplemental Brief,

[1] While the Tsangs, in their Cross-Complaint, do allege that Plaintiff interfered with their right to "live at their primary family residence", it was not Plaintiff's physical entrance onto their property that they claim caused this interference. (SUF 10) In order to trigger Defendant's duty to defend, the invasion of right to private occupancy must be "by physically entering into that person's personal residence. (SUF 35.)

Plaintiff submits four cases to the Court as support of this argument. (Supp. Brief at 1-3.) None of these cases are factually relevant. The first two cases relate to land and groundwater contamination. *See Hirschberg v. Lumbermens Mut. Cas.*, 798 F. Supp. 600 (N.D. Cal. 1992); *Martin-Marietta Corp. v. Ins. Co. of North America*, 40 Cal. App. 4th 1113 (1995). The third relates to noise from one property interfering with the homeowners' quiet use and enjoyment of their homes on the neighboring property. *See Lakeland Village Homeowners Association v. Great American Insurance Group*, 727 F. Supp. 2d 887 (E.D. Cal. 2010). And the fourth relates to a newly constructed fence which blocked half of a neighbor's only access to her home. *See Albert v. Truck Ins. Exchange*, 23 Cal. App. 5th 367 (2018). Moreover, in all of the four cases Plaintiff cites, the neighbor who was making the claim for invasion of right to private occupancy was actually occupying her land, and alleging that the interference prevented her from using or enjoying her land in some way. Here, the Tsangs were not occupying their property at the time of Plaintiff's trespass and have not alleged that they were prevented from using or enjoying their property because of her trespass onto their construction site.

None of the facts alleged in the Tsangs' Cross-Complaint or their Ex-Parte Application give rise to a "loss" that would trigger a duty to defend Plaintiff in the underlying actions under the Personal Liability Umbrella Policy.

**C. The Remaining Claims Also Fail**

Because Defendant has no duty to defend Plaintiff under either the Homeowner Policy or the Personal Liability Umbrella Policy, it has no duty to indemnify Plaintiff under either policy. *See Anthem Elecs., Inc. v. Pac. Employers Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. 2002) ("Because the duty to defend is broader than the duty to indemnify, summary judgment for the insurers on the former necessarily includes the

latter.") And, because Defendant owes Plaintiff no defense, it need not pay for independent counsel. Finally, because Defendant has no duty to defend or indemnify Plaintiff, no benefits are due, so Plaintiff's breach of the covenant of good faith and fair dealing also fails. *See Trishan Air, Inc. v. Fed. Ins. Co.*, 635 F.3d 422, 434 (9th Cir. 2011) ("As a general rule… there can be no breach of the implied covenant of good faith and fair dealing if no benefits are due under the policy.'") (citation omitted).

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff Diana Gdowski's Motion for Partial Summary Judgment and **GRANTS** Summary Judgment in favor of Defendant State Farm Insurance Company. Defendant shall submit a proposed Judgement within fourteen (14) days of entry of this order.

The Pretrial Conference and Jury Trial dates are vacated.

**IT IS SO ORDERED.**

Dated: September 17, 2019

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE